UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

_____

| | |
|---|---|
| Jeromy C. Wade | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CSX Transportation, Inc., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

_____

Plaintiff Jeromy C. Wade (hereinafter "Wade") brings this action for damages and other legal and equitable relief, stating the following as his claims against Defendant CSX Transportation, Inc. (hereinafter "Defendant" or "CSX"):

## NATURE OF ACTION

1. This case arises under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., as amended ("ADA"), and under the common law of the State of Indiana.

## PARTIES

2. Wade is an individual who resides in Owensville, Indiana.

3. Defendant is a railroad carrier engaged in interstate commerce. Its headquarters is in Jacksonville, Florida.

4. Defendant employs more than 1,700 people and operates more than 2,600 miles of track in the State of Indiana.

5. Wade became an employee of Defendant in February 2000, as a Trackman in Evansville. Wade later became a Foreman of a bridge gang for Defendant. Wade's employment

with Defendant lasted from 2000 until late 2016, when Defendant permanently removed Wade from his job.

## JURISDICTION AND VENUE

6. Wade's primary claims arise under the ADA. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

7. This Court has supplemental jurisdiction over Wade's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the ADA claims as to form part of the same case or controversy.

8. This Court has personal jurisdiction over Defendant because it conducts substantial business in Indiana, and because the case arises out of Defendant's actions in Indiana.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant resides in the district and because the events giving rise to Wade's claims occurred in the district.

## FACTUAL ALLEGATIONS

10. On or about May 16, 2014, Wade suffered a heart attack while pulling a man out of a car wreck as part of his service with the volunteer fire department.

11. Wade recovered from the heart attack and returned to work on or about July 1, 2014.

12. A year later, in June 2015, Wade experienced chest pain. Wade consulted with his doctor, who recommended the implantation of a cardiac defibrillator ("ICD"). The ICD was implanted on or about June 22, 2015.

13. Wade returned to work following the ICD implantation on or about August 3, 2015.

14. With an ICD, Wade could not hold a commercial driver's license ("CDL"). Defendant would not allow Wade to come back to work as either a Foreman or a Machine Operator, ostensibly because Wade could not hold a CDL.

15. The applicable collective bargaining agreement did not require Foreman or Machine Operators to hold CDLs.

16. Therefore, Wade disagreed with Defendant's determination that he could not work as a Foreman or a Machine Operator without a CDL.

17. Wade ultimately returned to work for Defendant in a Bridge Mechanic position, rather than into the Foreman position that he had previously held.

18. On June 1, 2016, Wade wrote a letter for his union to forward along to Defendant. In the June 1 letter, Wade complained that "CSX has failed to make reasonable accommodations" by prohibiting him from returning to his Foreman position after his disability leave, during which the ICD was implanted. Wade further requested to "meet with the appropriate personnel, so we may find a resolution."

19. Then, on or around September 9, 2016, Defendant removed Wade from his position as a Bridge Mechanic. Defendant's stated reason for removing Wade from his job was that his ICD prevented him from using certain tools, such as welders, chainsaws, and jackhammers.

20. By the time of his removal on September 9, Wade had been successfully performing the Bridge Mechanic job, without incident, for over a year. He had never had to use any of those types of tools during his year on the job.

21. Furthermore, Defendant was aware of Wade's heart condition and ICD when Wade started in the Bridge Mechanic job a year earlier.

22. On or around December 7, 2016, after Wade had been out of work for over three months, he received a letter from Defendant's Director of Labor Relations, Michael A. Skipper. Skipper offered to put Wade back to work as a Flagman if Wade and his union representative agreed to certain conditions. The December 7 letter had signature lines for Wade and his union representative, allowing them to counter-sign the letter to indicate agreement.

23. Skipper stated in the letter that the Flagman position did not require the use of welders, chainsaws, and jackhammers.

24. Wade and his union representative accepted the conditions of the December 7 letter, counter-signed it, and returned it to Defendant.

25. After signing the December 7 letter agreement, Wade was told that he could go back to work for Defendant as a Flagman. He showed up to work on or about December 27, 2016, as instructed. But when Wade arrived, he was told by a manager that he could not work, and he was sent home without further explanation.

26. On or about February 21, 2017, Wade filed a Charge of Discrimination against CSX with the EEOC.

27. On or around February 24, 2017, Skipper wrote to Wade and his union representative again. In the February 24 letter, Skipper purportedly "revoked" the December 7 letter agreement, stated that the Flagman position *does* require the use of welders, chainsaws, and jackhammers, after all, and disallowed Wade from returning to work.

28. To date, Wade has not been allowed to return to work for Defendant.

## CAUSES OF ACTION

## COUNT I

**VIOLATIONS OF THE ADA**
**DISABILITY DISCRIMINATION—DISPARATE TREATMENT**

29. The ADA defines a disability as (A) a physical or mental impairment that impairs one or more major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

30. Wade's heart condition, treated with an ICD, qualifies as a disability. As such, Wade is protected by the ADA.

31. At all relevant times, Wade had the requisite skill, experience, education and other job-related requirements for the positions, and was therefore a qualified individual under the ADA.

32. At all relevant times, Wade could perform the essential functions of his position, with or without reasonable accommodations.

33. Section 12112(a) of the ADA prohibits employers from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

34. Defendant discriminated against Wade on the basis of disability by, among other things, not allowing him to return to his Foreman position, removing him from the Bridge Mechanic position, and failing to let him fill the Flagman position.

35. Because Defendant violated 42 U.S.C. § 12112, Wade has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Wade is also entitled to attorneys' fees and costs incurred in connection with these claims.

36. Defendant committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of Wade. As a result, he is entitled to punitive damages.

## COUNT II

### VIOLATIONS OF THE ADA
### RETALIATION

37. The ADA prohibits retaliation against an individual because he opposes unlawful discrimination, seeks accommodations, files a complaint, or testifies, assists, or participates in an investigation or proceeding under the ADA. 42 U.S.C. § 12203. The ADA also prohibits coercion, intimidation, threats, or interference with an individual's exercise or enjoyment of his rights under the ADA. 42 U.S.C. § 12203(b).

38. Defendant retaliated against Wade for, among other things, sending the June 1, 2016 letter in which he complained about Defendant's failure to make reasonable accommodation, requested accommodation, and requested to engage in the interactive process.

39. Defendant retaliated against Wade by, among other things, taking him out of the Bridge Mechanic job and failing to place him into the Flagman job.

40. Because Defendant violated the ADA, Wade has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Wade is also entitled to attorneys' fees and costs incurred in connection with these claims.

41. Defendant committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of Wade. As a result, he is entitled to punitive damages.

## COUNT III

### VIOLATIONS OF THE ADA
### FAILURE TO ACCOMMODATE

42. Wade is a qualified individual with a disability under the ADA.

43. Discriminating against a qualified individual with a disability includes:

[N]ot making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an

applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]

42 U.S.C. § 122112(b)(5)(A).

44. Defendant failed to accommodate Wade when it refused to allow Wade to continue in his Foreman job, when it removed him from his Bridge Mechanic job, and when it would not let him fill the Flagman job.

45. Defendant also violated the ADA when it failed to engage in the interactive process with Wade, to determine what accommodation, if any, would allow Wade to fill any of these positions.

46. Because Defendant violated the ADA, Wade has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Wade is also entitled to attorneys' fees and costs incurred in connection with these claims.

47. Defendant committed the above-alleged acts with reckless disregard or deliberate disregard for the rights and safety of Wade. As a result, he is entitled to punitive damages.

## **COUNT IV**

### **VIOLATIONS OF THE ADA**
### **DISABILITY DISCRIMINATION—DISPARATE IMPACT**

48. Wade is a qualified individual with a disability under the ADA.

49. Discriminating against a qualified individual on the basis of disability includes "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position and is consistent with business necessity." 42 U.S.C. § 12112(b)(6).

7

50. Discriminating against a qualified individual on the basis of disability also includes "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability". 42 U.S.C. § 12112(b)(3).

51. Defendant discriminated against Wade on the basis of disability.

52. Defendant's requirement that all Foremen have a CDL disproportionately—and adversely—impacts qualified individuals with disabilities.

53. Defendant's job description for the Flagman position states that Flagmen may have to operate machinery such as saws, welders, and other hand tools, even though these responsibilities are not actually performed by Flagmen. This standard disproportionately—and adversely—impacts qualified individuals with disabilities.

54. Defendant cannot show that such practices and qualification standards are job-related and consistent with business necessity.

55. Because Defendant violated 42 U.S.C. § 12112, Wade has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Wade is also entitled to attorneys' fees and costs incurred in connection with these claims.

56. Defendant committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of Wade. As a result, he is entitled to punitive damages.

## COUNT V

## BREACH OF CONTRACT

57. The elements of a breach of contract claim are: the existence of a contract, the defendant's breach of that contract, and damages.

58. The December 7, 2016 letter—signed by Wade, his union representative, and Defendant's Director of Labor Relations—constitutes a contract.

59. Defendant breached the contract when it refused to allow Wade to fill a Flagman position.

60. Because Defendant breached the contract, Wade has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000.

## COUNT VI

### PROMISSORY ESTOPPEL

61. The elements of a promissory estoppel claim are (1) a promise (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise.

62. The December 7, 2016 letter offering to put Wade to work as a Flagman was a promise.

63. Defendant made that promise with the expectation that Wade would rely upon it. Wade reasonably did rely on the promise when he forewent applying for other jobs; when he opted against filing for Railroad Retirement Board benefits and other benefits because he believed he was going back to work; and when he showed up to work as a Flagman.

64. Injustice can be avoided only by enforcing that promise, by returning Wade to work in a Flagman position, and an award of damages for Defendant's failure to do so on or about December 7, 2016.

9

65. As a result of Defendant's broken promise, Wade has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jeromy Wade prays for judgment against Defendant as follows:

1. That the practices of Defendant complained of herein be determined and adjudged to constitute violations of the ADA and Indiana common law;

2. That Defendant and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, be enjoined from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3. For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages, all in an amount in excess of $75,000;

4. For an award of breach of contract damages in an amount in excess of $75,000;

5. For an award of pre-judgment interest pursuant to law;

6. For an award of Wade's costs, disbursements and attorneys' fees pursuant to law;

7. For all relief available under the ADA and Indiana common law;

8. For such other and further relief available by statute; and

9. For such other and further relief as the Court deems just and equitable.

**NICHOLS KASTER, PLLP**

Dated: November 21, 2017

s/Rebekah L. Bailey
David E. Schlesinger* (MN #0387009)
Charles A. Delbridge* (MN #0386639)
Rebekah L. Bailey*    (MN #0389599)
schlesinger@nka.com
cdelbridge@nka.com
bailey@nka.com
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878
*pro hac vice application forthcoming*

**ATTORNEYS FOR PLAINTIFF WADE**